IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **RAMPART IC, LLC,**<br><br>    Plaintiff,<br><br>v.<br><br>**EGG MEDICAL, INC.,**<br><br>    Defendant. | Court No. 1:24-cv-00643-JCG |

## OPINION AND ORDER

Rampart IC, LLC ("Rampart" or "Plaintiff") filed a complaint against Egg Medical, Inc. ("Egg Medical" or "Defendant") for patent infringement in the District of Delaware. Compl. (D.I. 1). Rampart alleges that Egg Medical's "EggNest Complete" product infringes its patent, "Swinging Shielding System for Use with a Radiation Source." Id. ¶ 7, 9.

Rampart is incorporated in the state of Delaware, and its principal place of business is in Alabama. Id. ¶ 1. Egg Medical is also incorporated in the state of Delaware, but its principal place of business is in Minnesota. Id. ¶ 2. Egg Medical moves to transfer this case from the District of Delaware to the District of Minnesota. Def. Egg Medical, Inc.'s Mot. Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Def.'s Mot.") (D.I. 15); Egg Medical, Inc.'s Opening Br. Support Def.'s

Mot. ("Def.'s Br.") (D.I. 16).  For the reasons that follow, the Court denies the motion to transfer.

## I. Jurisdiction and Legal Standard

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, which grant the Court jurisdiction over civil actions relating to patents, plant variety protection, copyrights, and trademarks.

Within the Third Circuit, courts apply a two-step test when reviewing a motion to transfer: (1) determine whether the case could have been brought in the movant's suggested district and (2) consider and weigh twelve public and private factors.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 878–79 (3d Cir. 1995).  The twelve Jumara factors are divided equally into two groups: private interest factors and public interest factors.  The six private interest factors are (1) plaintiff's original forum choice; (2) defendant's preferred forum; (3) where the claim(s) arose; (4) the convenience of the parties, based on their relative physical and financial condition; (5) the convenience of witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).  The six public interest factors are (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) a comparison of court congestion

between the two fora; (10) the local interest in deciding local controversies at home; (11) the public policies of the two fora; and (12) the judge's familiarity with the applicable state law in a diversity case.

## II. Discussion

For step one, the Parties agree that this case could have been filed in the District of Minnesota in the first instance. Def.'s Br. at 7; Pl.'s Answering Br. Opp. Def.'s Mot. Transfer ("Pl.'s Br.") at 2 n.1 (D.I. 24). Egg Medical's principal place of business is in Minnesota, so the District of Minnesota would have been a valid forum for Plaintiff to file suit in. For step two, the Parties diverge in their consideration and weighing of the twelve factors enumerated in Jumara. Compare Def.'s Br. at 7–20 with Pl.'s Br. at 4–20.

### A. Factor One: Plaintiff's Choice of Forum

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request," and this choice "should not be lightly disturbed." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (internal quotations and citation omitted). Egg Medical avers that Rampart's choice in forum should be given limited weight because Rampart's only connection to Delaware is its incorporation status. The cases Egg Medical cites in support of its argument are not persuasive and do not trump longstanding Third Circuit precedent.

First, Egg Medical relies on Personal Genomics Taiwan Inc. v. Pacific Biosciences of California Inc., C.A. No. 19-1810-GBW, 2024 WL 3043329 (D. Del. June 18, 2024) to support its position. Personal Genomics involved a Taiwanese plaintiff company alleging patent infringement. The Court finds Personal Genomics factually distinguishable because Rampart is an out-of-state company, not a foreign entity. Next, Egg Medical cites Express Mobile, Inc. v. Web.com Group, Inc., No. 19-CV-1936-RGA, 2020 WL 3971776 (D. Del. July 14, 2020) in support of its argument to give Rampart's forum choice less deference. The Express Court gave only slightly less deference to the plaintiff's choice of forum, and it expressly acknowledged that doing so ran afoul of Third Circuit precedent. When declining to give the plaintiff's forum choice paramount consideration, the Express Court noted that "[b]y paramount, I understand the Court of Appeals to indicate that the plaintiff's choice is the most important factor. That is the law." Id. at *2. The district court then proceeded to explain that the plaintiff's choice was "still the most important factor," but ceded that "it will not dominate the balancing to the same extent it otherwise might." Id.

Lastly, Egg Medical cites to Memory Integrity, LLC v. Intel Corp., C.A. No. 13-1804-GMS, 2015 WL 632026 (D. Del. Feb. 13, 2015) in support of its lesser deference theory. In Memory Integrity, the district court emphasized that while the plaintiff was "a Delaware corporation with its principal place of business in

Wilmington, Delaware," "describing Delaware as where Memory Integrity is 'physically located' d[id] not fully address the situation." Id. at *2–3. The district court explained that "Memory Integrity is a non-practicing entity with no facilities, operations, employees, or presence in Delaware." Id. at *3. When deciding to give Memory Integrity's choice of forum less deference, the district court cited to Ithaca Ventures k.s. v. Nintendo of America Inc., No. 13–824–GMS, 2014 WL 4829027, at *2–3 (D. Del. Sept. 25, 2014) as support for its ruling. In Ithaca Ventures, the district court minimized the weight afforded to the plaintiff's choice because it determined that the plaintiff corporation recently underwent a corporate reorganization motivated significantly by litigation efforts. Ithaca Ventures k.s., 2014 WL 4829027, at *2–3. Such concerns are not present here.

None of the case law that Egg Medical provides in its brief justifies ignoring Third Circuit precedent. This Court will give Rampart's choice to file in the District of Delaware paramount consideration, and this Court will not disturb Rampart's choice lightly. Shutte, 431 F.2d at 25. This court has previously noted that it is "difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or when the facts underlying the controversy occurred elsewhere." VLSI Tech. LLC v. Intel Corp., No. CV 18-966-CFC, 2018 WL 5342650, at *5 (D. Del. Oct. 29, 2018); e.g., Blackbird Tech LLC v. E.L.F. Beauty, Inc., No. CV 19-1150-CFC, 2020 WL

2113528, at *2 (D. Del. May 4, 2020); Williamsburg Furniture, Inc. v. Lippert Components, Inc., No. CV 19-1993-CFC, 2020 WL 331119, at *3 (D. Del. Jan. 21, 2020); LoganTree LP v. Omron Healthcare, Inc., No. CV 18-1617 (MN), 2019 WL 4538730, at *5 (D. Del. Sept. 19, 2019).   Many of the reasons for lessening the importance of a plaintiff's choice in forum "are subsumed and given weight under Jumara factors 3 (whether the claim arose elsewhere), 4 (convenience of the parties), 5 (convenience of the witnesses), 6 (location of books and records), 8 (practical considerations that could make the trial easy, expeditious, or inexpensive), and 10 (the local interest in deciding local controversies at home)[.]" VLSI Tech. LLC, 2018 WL 5342650, at *5.   In order to not double count any of the Jumara factors, the Court will not weigh those arguments here.   Based upon Rampart's choice to file suit in the District of Delaware, the Court finds that this factor weighs heavily against transfer.

      **B. Factor Two: Defendant's Forum Preference**

Egg Medical has proposed the District of Minnesota as a forum to oversee this case.  Egg Medical explains that the District of Minnesota is a preferable forum because Egg Medical's place of business, majority of its party witnesses, and evidence are located in Minnesota.  The Court finds that this factor weighs slightly in favor of transfer, but the Court notes that Egg Medical's arguments related to convenience, party witnesses, and evidence are subsumed and given

weight under Jumara factors four, five, and six, and thus the Court will not consider them here.

### C. Factor Three: Location Where the Claims Arose

A patent infringement claim arises when a party "makes, uses, offers to sell, or sells any patented invention" without the authority to do so.  35 U.S.C. ¶ 271(a). For purposes of transfer, this factor can be "neutral where the defendant in a patent infringement action operates on a national level as the infringement can be viewed as occurring in all districts."  Memory Integrity, LLC, 2015 WL 632026, at *3. However, a patent infringement claim does have "deeper roots in the forum where the accused products were developed."  Id.

This factor weighs in favor of transfer.  Egg Medical primarily designs, develops, and manufactures the product in Minnesota, which plants the roots of Rampart's claims in Minnesota.  Def.'s Br. at 10.  Additionally, Egg Medical avers that it has not sold the product in Delaware.  Id.

### D. Factor Four: Parties' Convenience

When determining convenience in a transfer analysis, a district court can look to several factors, which include "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and

financial wherewithal." Smart Audio Techs., LLC v. Apple, Inc., 910 F. Supp. 2d 718, 731 (D. Del. 2012). First, Egg Medical is located in Minnesota, so Minnesota is more convenient for Egg Medical. Def.'s Br. at 11. Rampart is located in Alabama. Id. Egg Medical asserts that Rampart "is no less inconvenienced traveling to Minnesota than to Delaware," id. at 12, while Rampart avers it is more convenient to travel to Delaware than to Minnesota. Pl.'s Br. at 12.

For the second factor, the logistical and operational costs for Egg Medical would be much less if the case proceeded in Minnesota as opposed to Delaware. For Rampart, the costs may be slightly less if the case proceeded in Delaware as opposed to Minnesota. Lastly, neither party provided information pertaining to its ability to "bear these costs in light of its size and financial wherewithal." Smart Audio Techs., 910 F. Supp. 2d at 731.

Upon review of these three factors, while it may be more convenient for Egg Medical to litigate in Minnesota, Egg Medical has failed to show that it faces a "unique or unexpected burden" if litigation continues in Delaware. ADE Corp. v. KLA–Tencor Corp., 138 F. Supp. 2d 565, 573 (D. Del. 2001). Indeed, "absent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." Id. Notably, this court has previously found this factor neutral in a case when both parties were headquartered in California because the defendant failed to show it

would suffer a "unique or unexpected burden" by having to litigate in Delaware, when the defendant had chosen to incorporate in Delaware. Arbor Glob. Strategies LLC v. Xilinx, Inc., No. CV 19-1986 (MN), 2020 WL 4673832, at *3 (D. Del. Aug. 12, 2020). Because Egg Medical chose to incorporate in Delaware, accepted the benefits of incorporation under the laws of the State of Delaware, and failed to show that it faces a "unique or unexpected burden" if litigation continues in Delaware, the Court finds that this factor neutral.

### E. Factor Five: Convenience of Non-Party Witnesses

When considering the convenience of non-party witnesses, the court does so "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879. Egg Medical identifies one witness who would be unavailable for trial: Egg Medical's former Chief Commercial Officer. Def.'s Br. at 13. The former CCO no longer works for Egg Medical, but he lives in Minnesota and has relevant knowledge pertinent to Rampart's claim. Id. Egg Medical argues that this weighs heavily in favor of transfer. Id. Although Egg Medical overstates the degree of weight, this factor does favor transfer.

While Egg Medical did not thoroughly explain the CCO's importance, i.e. whether the CCO is the only person with such knowledge, this court has found this factor to favor transfer under similar circumstances. Gen. Sci. Corp. v. Den-Mat Holdings, LLC, No. CV 21-882-CFC, 2021 WL 4622548, at *5 (D. Del. Oct. 7,

2021) (finding transfer favored when the defendant's former employee "may be unavailable for trial in Delaware but available for trial in California, where he is employed and therefore within the subpoena power of the Central District of California" (internal quotation omitted)). Even one of the cases cited by Rampart supports transfer under these circumstances. Pl.'s Br. at 13.

In support of its argument against transfer, Rampart cites to Husqvarna AB v. Toro Co., No. CV 15-856-SLR-SRF, 2016 WL 4257764, at *7 (D. Del. Aug. 11, 2016), report and recommendation adopted sub nom. Husqvarna AB v. The Toro Co., No. CV 15-856-SLR, 2016 WL 4599897 (D. Del. Sept. 2, 2016). In Husqvarna, the defendant "provided detailed sworn testimony establishing that four witnesses having independent, firsthand knowledge of key evidence [of an early prototype] invalidating Plaintiffs' patent will not and cannot attend trial in Delaware, but can be compelled to attend trial in Minnesota." Id. at *5. The Husqvarna noted that inconvenient travel does not equate to being unavailable for trial, but the court in Husqvarna ultimately found that this factor weighed slightly in favor of transfer. Id. at 5–7. Similarly, the Court finds this factor slightly weighs in favor of transfer.

### F. Factor Six: Location of Books and Records

The Court acknowledges that "[t]he notion that the physical location of some relevant documents should play a substantial role in the venue analysis is

somewhat antiquated in the era of electronic storage and transmission." Sanofi–Aventis Deutschland GmbH v. Genentech, Inc., 607 F. Supp. 2d 769, 777 (E.D. Tex. 2009). However, the Court is aware that the "antiquated era argument was essentially rejected in Volkswagen because it would render this factor superfluous." In re Genentech, Inc., 566 F.3d 1338, 1346 (Fed. Cir. 2009). Instead, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." Id. at 1345 (citation omitted). Because the Court may not consider modern practicalities, this factor weighs in favor of transfer to Minnesota because all of Egg Medical's relevant documents and physical evidence are located in Minnesota.

### G. Factor Seven: Enforceability of the Judgment

The Parties, and the Court, agree this factor is neutral. Def.'s Br. at 15; Pl.'s Br. at 16. A ruling in this matter carries the same enforceability whether it is entered in the District of Delaware or the District of Minnesota.

### H. Factor Eight: Practical Considerations

Pursuant to Jumara, practical considerations are those "that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Most of the concerns raised by Egg Medical under this factor are concerns that are subsumed and given

weight under other Jumara factors.  Def.'s Br. at 15-16.  Egg Medical is correct that the Court should consider the Parties' incorporation status here.  Id.

Other district courts have done so and found "[t]his factor strongly favor[ed] transfer" when neither party "ha[d] a connection with Delaware other than its incorporation status."  Applied Predictive Techs., Inc. v. MarketDial, Inc., No. CV 18-963-CFC, 2019 WL 2745724, at *5 (D. Del. July 1, 2019).  Similarly here, the Parties' only connection to Delaware is their incorporation status.

Additionally, one of Rampart's LLC members resides in Minnesota. For purposes of diversity jurisdiction, which the Court notes is not implicated here, an LLC can be said to be a citizen of every state where one of its LLC members resides.  Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010). Considering the Parties' incorporation status and Rampart's member's residency in Minnesota, this factor weighs in favor of transfer to the District of Minnesota.

I. **Factor Nine: Court Congestion of the Two Fora**

The Parties present competing frameworks for the Court's analysis of this factor: Egg Medical compares court congestion between the District of Minnesota and the District of Delaware, Def.'s Br. at 16–18, and Rampart focuses on this Court's designation status.  Pl.'s Br. at 17–18.  Egg Medical is correct that the weighted filings per judge are greater in Delaware than in Minnesota, but this factor is "offset by the fact that this case has been assigned to a visiting judge with

a smaller district court docket than the active judges in the District of Delaware." Deloitte Consulting LLP v. Sagitec Sols. LLC, 692 F. Supp. 3d 421, 437 (D. Del. 2023).

This Court, sitting by designation from the United States Court of International Trade, has a less congested docket than both the District of Delaware and the District of Minnesota. "[T]his factor weighs slightly against transfer." Schwartz v. Latch, Inc, No. CV 23-27-WCB, 2024 WL 4765691, at *5 (D. Del. Nov. 13, 2024) (comparing the visiting judge's district court docket with the District of Delaware's docket).

### J. Factor Ten: Local Controversy

The Parties, and the Court, agree this factor is neutral. Def.'s Br. at 18; Pl.'s Br. at 18. This court has previously held that patent cases "do[] not constitute a local controversy in most cases." Helicos Biosciences Corp. v. Illumina, Inc., 858 F. Supp. 2d 367, 375 (D. Del. 2012). Instead, "courts in this district have held that the 'local interest' factor is typically neutral in patent cases because in general a patent infringement action is 'more properly described as a national controversy.'" Take2 Techs. Ltd. v. Pac. Biosciences of Cal., Inc., No. CV 22-1595-WCB, 2023 WL 4930359, at *10 (D. Del. Aug. 2, 2023) (quoting Schubert v. Cree, Inc., No. 12-922, 2013 WL 550192, at *6 (D. Del. Feb. 14, 2013)).

### K. Factor Eleven: Public Policy Considerations

Egg Medical asserts that this factor is neutral for two reasons. First, Egg Medical argues that general public policy concerns are not implicated in a federal patent law case. See Dermansky v. Young Turks, Inc., No. CV 22-345-GBW, 2023 WL 4351340, at *5 (D. Del. July 5, 2023) (finding "there is no reason to believe that states would apply differing public policy considerations in the application of federal copyright law"). Second, Egg Medical avers that Delaware's well-known and long-standing public policy encouraging companies incorporated in Delaware to litigate their disputes in Delaware does not apply to federal cases or patent cases. The Court disagrees.

"The public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for resolution of business disputes." Graphics Properties Holdings Inc. v. Asus Computer Int'l, Inc., 964 F. Supp. 2d 320, 331 (D. Del. 2013) (quoting Wacoh Co. v. Kionix Inc., 845 F.Supp.2d 597, 604 & n. 9 (D. Del. 2012)). Egg Medical argues that this policy only pertains to Delaware state courts; however, the Court does not view the policy to be so limited. This court has previously held that "this factor weighs slightly against transfer because Plaintiff is a Delaware limited liability company and Defendant is a Delaware corporation and public policy encourages Delaware corporations to resolve disputes in Delaware courts." Arbor Glob. Strategies LLC, 2020 WL 4673832, at

*6. This court has previously found that this factor weighed against transfer even when only one party was a Delaware corporation. Graphics Properties Holdings Inc., 964 F. Supp. 2d at 331.

Here, both Parties are incorporated in Delaware and should be encouraged to use Delaware as a forum for their business dispute. This analysis is in harmony with the Court's earlier analysis under factor four, parties' convenience, which found that entities that seek out and claim the benefits of incorporating in Delaware should not be able to argue that litigating in Delaware is inconvenient. This factor weighs slightly against transfer.

### L. Factor Twelve: Familiarity with State Law

The Parties, and the Court, agree this factor is neutral. Def.'s Br. at 19; Pl.'s Br. at 18. Rampart's claims arise under federal patent law; state law is not implicated in this matter. Both the District of Delaware and the District of Minnesota can apply the federal law equally to these claims. Gen. Sci. Corp., 2021 WL 4622548, at *4.

### M. Balancing the Twelve Jumara Factors

When analyzing the twelve Jumara factors, district courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." Jumara, 55 F.3d at 883 (citing Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22 (1988)).

To grant a motion to transfer, a district court must find that these factors strongly favor transfer. Shutte, 431 F.2d at 25 ("[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." (internal quotation omitted)).

Deciding what balance of factors "strongly favors" transfer is within the court's discretion. Here, five factors favor transfer, four factors are neutral, and three disfavor transfer. Each factor may not carry equal weight in the court's consideration. Intell. Ventures I LLC v. Altera Corp., 842 F. Supp. 2d 744, 754-61 (D. Del. 2012) (describing the Jumara factors and affording them differing weight based on the facts of the case). In Intellectual Ventures, the court similarly had five factors favoring transfer, four neutral factors, and three factors disfavoring transfer. Id. at 760. The Intellectual Ventures Court found that the defendants failed to prove that the factors weighed strongly in favor of transfer. Id. ("On the whole, then, recognizing the appropriate weight to be granted to each factor, the Court concludes that Defendants have failed to satisfy their burden of showing that the balance of convenience factors and interests of justice weigh strongly in favor of transfer.").

Here, the factors weighing against transfer are plaintiff's choice of forum, court congestion, and public policy considerations. The neutral factors are parties' convenience, judgment enforceability, local controversy, and familiarity with state

law. The factors weighing in favor of transfer are defendant's forum preference, the location where the claim arose, convenience of non-party witnesses, location of books and records, and practical considerations. The factors weighing in favor of transfer should all be given minimal weight, while two of the three factors weighing against transfer should be given significant weight. After considering and balancing all twelve of the <u>Jumara</u> factors, the Court finds that Defendants have failed to satisfy their burden of showing that the balance of convenience factors and interests of justice weigh strongly in favor of transfer. This case should not be transferred to the District of Minnesota.

### III. Conclusion

Accordingly, it is hereby

**ORDERED** that Defendant Egg Medical, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (D.I. 15) is denied; and it is further

**ORDERED** that, not later than thirty (30) days from the date of this Order, the Parties shall meet and confer and file a joint proposed Scheduling Order in this action consistent with the applicable form Scheduling Order of Chief Judge Connolly, which is posted at https://www.ded.uscourts.gov/judge/chief-judge-colm-f-connolly, along with a cover letter requesting the Court enter the joint proposed Scheduling Order (if there are no disputes or other issues concerning scheduling that the Court needs to address) or schedule a Scheduling Conference.

If the Parties are unable to agree upon a proposed scheduling order, each Party shall file a proposed scheduling order by the deadline and contact my Case Manager, Steve Taronji, by telephone at (212) 264-1611 or via e-mail at steve_taronji@cit.uscourts.gov, to arrange a conference with the Court.

    DATED: January 17, 2025

                                                                      /s/ Jennifer Choe-Groves
                                                                   Jennifer Choe-Groves[*]
                                                             U.S. District Court Judge

---

[*] Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.