# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **RAMPART IC, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Court No. 1:24-cv-00643-JCG** |
| **EGG MEDICAL, INC.,** | |
| **Defendant.** | |

## <u>OPINION AND ORDER</u>

This matter involves patent infringement claims filed by Rampart IC, LLC ("Rampart or "Plaintiff") against Egg Medical, Inc. ("Egg Medical" or "Defendant").  Rampart alleges that Egg Medical infringed upon its patent for an X-ray shield product.  Egg Medical filed a motion to stay pending *ex parte* reexamination.  For the reasons discussed below, Egg Medical's motion to stay is granted.

## BACKGROUND

Rampart is the exclusive owner by assignment of U.S. Patent No. 11,660,056 ("the '056 Patent"), and holds all rights, title, and interest in it.  Compl. ¶ 7 (D.I. 1).  The '056 Patent is titled "Swinging Shielding System for Use with a

Radiation Source" and was issued by the U.S. Patent and Trademark Office ("USPTO") on May 30, 2023.  Id.  Rampart filed a complaint against Egg Medical for patent infringement in the District of Delaware on May 31, 2024.  Id. ¶¶ 1–17  Rampart alleged that Egg Medical's "EggNest Complete" product infringes its '056 Patent.  Id. ¶¶ 7, 9, 14.

Egg Medical filed an answer and a motion to transfer venue on July 22, 2024.  Answer, (D.I. 12); Mot. Transfer Venue, (D.I. 15–18).  While the motion to transfer was pending, Egg Medical filed three requests with the USPTO for *ex parte* reexamination of the '056 Patent.  Decl. Marchevsky ¶ 4, (D.I. 36).

On December 17, 2024, the USPTO issued a non-final office action that rejected all thirty claims set forth in Rampart's '056 Patent.  Id. at Ex. 3.  The following month, this Court denied Egg Medical's motion to transfer and directed the Parties to submit a proposed scheduling order by February 18, 2025.  Opinion & Order, Jan. 17, 2025, (D.I. 28).  On February 18, 2025, Egg Medical filed its Motion to Stay Proceedings Pending *Ex Parte* Reexamination of U.S. Patent No. 11,660,056 ("Motion to Stay") (D.I. 32), Opening Brief in Support of its Motion to Stay ("Defendant's Brief") (D.I. 33), and supporting Declarations (D.I. 35–36), as well as a Joint Proposed Scheduling Order (D.I. 34).

Rampart filed its Answering Brief in Opposition ("Plaintiff's Brief") on March 11, 2025.  (D.I. 47).  The next day, the Court held a Scheduling Conference

by videoconference, during which it heard argument from the Parties on the

Motion to Stay.  Rampart submitted proposed amendments for each independent

claim to the USPTO on March 17, 2025.  Suppl. Decl. Marchevsky Ex. 7 (D.I. 50).

Egg Medical submitted its Reply in Support of its Motion to Stay and supporting

Declaration on March 18, 2025.  Def.'s Reply Br. (D.I. 49); Suppl. Decl.

Marchevsky (D.I. 50).

## STANDARD OF REVIEW

The decision whether to grant a stay rests within the Court's discretion.

Nken v. Holder, 556 U.S. 418, 433 (2009); Procter & Gamble Co. v. Kraft Foods

Global, Inc., 549 F.3d 842, 849 (Fed. Cir. 2008) (recognizing "the inherent power

of the district courts to grant a stay pending reexamination of a patent");

Commonwealth Ins. Co. v. Underwriters, Inc., 846 F.2d 196, 199 (3d Cir. 1988)

(same).  The party requesting a stay bears the burden of showing that

circumstances justify an exercise of judicial discretion.  Nken, 556 U.S. at 433–34.

## DISCUSSION

Courts consider three factors in evaluating a motion for a stay pending

post-grant proceedings.  Princeton Digit. Image Corp. v. Konami Digit. Entm't

Inc., No. CV 12-1461, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014) (citing

cases).  First, courts analyze whether granting the stay will simplify the issues for

trial.  Prolitec Inc. v. Scentair Tech., LLC, 2023 WL 5037173, at *2 (D. Del. Aug.

8, 2023).    Next, courts review the status of the litigation, particularly whether

discovery is complete and a trial date has been set.  Id.  Lastly, courts consider

whether a stay would cause the non-movant to suffer undue prejudice from any

delay or allow the movant to gain a clear tactical advantage.  Id.  Here, all three

factors weigh in favor of granting a stay.

## I.      Simplification of the Issues

The most important factor bearing on whether to grant a stay is whether the

stay is likely to simplify the issues at trial.  Id. at *4.  Rampart argues that

reexamination will not simplify the issues at trial because reexamination of all the

claims is neither "extraordinary" nor "as significant as the Defendant suggests it

is."  Pl.'s Br. at 13.  In the same paragraph, Rampart describes that "only 13.7% of

the reexaminations result in a cancellation of all of the claims[,]" which is indeed

the case here and appears significant.  Id.  Egg Medical responds that the rejection

of all claims is significant because it creates a high likelihood that a stay will

simplify the issues at trial or moot the case entirely.  Def.'s Br. at 7; Def.'s Reply

Br. at 2–5.   The Court agrees.

Rejection of all claims presents "a prime example of a case in which a

reexamination decision has the greatest likelihood of simplifying issues at trial."

British Telecomms. PLC v. IAC/InterActiveCorp, C.A. No. 18-366-WCB, 2020

WL 5517283, at *9 (D. Del. Sept. 11, 2020).  An ex parte reexamination is "highly

likely to result in at least some cancelled or modified claims." <u>TTI Consumer</u>

<u>Power Tools, Inc., v. Techtronic Power Tools Tech. Ltd.</u>, No. 22-673-CFC, 2022

WL 16739812, at *1 (D. Del. Nov. 7, 2022) (finding simplification of the issues

when all thirteen claims were initially rejected pending *ex parte* review).  Rampart

cites no factually analogous case from this jurisdiction in which a rejection of all

claims weighed against a stay.[1]  Here, all thirty of the patent claims were rejected

by the non-final office action.  Decl. Marchevsky Ex. 3.  This demonstrates a high

likelihood of simplifying or eliminating issues.  <u>TTI Consumer Power Tools</u>, 2022

WL 16739812, at *1.

　　　Rampart additionally argues that the burden of continuing litigation would

be minimal because the "upcoming stages of the litigation . . . will require scarcely

any of this Court's time and effort."  Pl.'s Br. at 15.  Egg Medical responds that

Rampart's framing fails to consider the burden on the Parties.  Def.'s Reply Br. at

5.  Rampart concedes that "[t]he majority of this year will be spent exchanging

infringement, invalidity and claim construction contentions and starting fact

discovery[.]"  Pl.'s Br. at 15 .

---

[1] <u>Boston Sci. Corp. v. Cordis Corp.</u>, 777 F. Supp. 2d 783, 789 (D. Del. 2011) (not all claims were rejected, and other factors weighed against a stay); <u>Belden Techs. Inc. v. Superior Essex Comms. LP</u>, No. 08-63-SLR, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010) (claim rejections were not considered under simplification analysis, and other factors weighed against a stay); <u>Cellectis S.A. v. Precision Biosciences</u>, 883 F. Supp. 2d 526, 533 (D. Del. 2012) (claim rejection occurred after the defendant moved to stay, and other factors weighed against a stay).

The time and resources spent by either Party or the Court on any claim that may be amended or rejected upon conclusion of *ex parte* review would be wasted. TTI Consumer Power Tools, 2022 WL 16739812, at *1 ("If all or some of the asserted claims are modified, this could render much of the parties' and Court's resources wasted."). The Joint Proposed Scheduling Order requires any amendments to claims be ordered by the Court. Joint Prop. Sched. Order ¶ 7. Thirty claims with an unpredictable number of amendments or ultimate rejections requires more than "scarcely any" of the Court's time and resources. Granting a stay would avoid placing this burden on the Court and the Parties. See, e.g., TTI Consumer Power Tools, 2022 WL 16739812, at *1.

For these reasons, the first factor weighs heavily in favor of a stay.[2]

## II.    Current Status of Litigation

The second factor considers whether discovery has begun and if a trial date has been set. Prolitec, 2023 WL 5037173, at *7. Here, discovery has just been initiated, no Scheduling Order has been entered, claim construction has not been briefed, and no Markman hearing or trial date has been set. Courts have granted stays even when trial is set and mere months away. See, e.g., TC Tech. LLC v.

---

[2] Rampart also argues under this factor that requesting *ex parte* reexamination over *inter partes* review cuts against a stay. Pl.'s Br. at 15–18. Rampart does not cite a case in this jurisdiction in which a court considered the type of reexamination relevant under this factor. The Court declines to do so today.

Sprint Corp., No. CV 16-153-WCB, 2021 WL 4521045, at *7 (D. Del. Oct. 4, 2021) (stay granted less than two months before trial); British Telecomms., 2020 WL 5517283, at *5 (stay granted less than three months before trial).   This factor favors granting a stay at this point in the proceedings.  See Ever Win Int'l Corp. v. Radioshack Corp., 902 F. Supp. 2d 503, 507 (D. Del. 2012) (stay granted when "[n]o initial disclosures have been exchanged, no Scheduling Order has been entered, no discovery has occurred, claim construction has not been briefed, and neither a *Markman* hearing nor a trial date have been set").

For these reasons, the second factor weighs in favor of a stay.

### III.    Undue Prejudice or Clear Tactical Advantage

The final factor for consideration is whether a stay would result in undue prejudice to the non-moving party or provide a clear tactical advantage to the moving party.  Prolitec, 2023 WL 5037173, at *8.  Courts typically examine four factors to evaluate whether prejudice or a tactical advantage may result: (1) the timing of a request for reexamination; (2) the timing of the motion to stay; (3) the status of the reexamination proceedings; and (4) the relationship of the parties.  Id. On balance, these factors indicate that a stay will neither unduly prejudice Rampart nor provide a clear tactical advantage to Egg Medical.

As a whole, the third factor weighs in favor of a stay.

### A. Timing of the Request for Reexamination

Rampart argues that the timing of the request for *ex parte* reexamination cuts against Egg Medical.  Pl.'s Br. at 9.  Rampart states that Egg Medical requested reexamination more than three months after the filing of the complaint and more than five months after receiving a cease-and-desist letter.  Id.  Egg Medical responds that the request's timing in relation to the complaint's filing is not so far detached as to constitute undue prejudice.  Def.'s Reply Br. at 9.

Courts find this factor indicative of undue prejudice or clear tactical advantage when there is a theme of delays or requests were filed after a trial. Affinity Labs of Texas, LLC v. Dice Elecs., LLC, 2009 WL 10296818, at *2 (E.D. Tex. Feb. 20, 2009) (finding a theme of delay when a group of twenty-four defendants filed four extensions to file Answers during the period in which one defendant requested reexamination); Boston Sci., 777 F. Supp. 2d at 789 (request for reexamination delayed years after the end of a jury trial establishing patent infringement liability).  Courts have also found no undue prejudice or clear tactical advantage in cases with longer delays and later filed requests for reexamination. See, e.g., IOENGINE, LLC v. PayPal Holdings, Inc., No. CV 18-452-WCB, 2019 WL 3943058, at *6 (D. Del. Aug. 21, 2019) (holding that "a delay of six months from the filing of the complaint [wa]s not unreasonable" for seeking *inter partes* review).

Here, there is no pattern of delay and the request for reexamination was not so far detached from the complaint as in Boston Scientific, which Rampart relies on, when the reexamination request was filed years after an earlier case found defendant liable on the patent. Egg Medical's request for reexamination was filed less than four months after the Complaint was filed, discovery had not been initiated, and a Scheduling Order had not yet been entered. "Granting a stay at this early stage will advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their resources addressing invalid claims." TTI Consumer Power Tools, 2022 WL 16739812, at *2 (holding that a case was "in its infancy" when minimal discovery had occurred and "the trial date [wa]s approximately two years away"). Under the case's current posture, a stay will not result in undue prejudice or a clear tactical advantage.

### B. Timing of the Motion to Stay

Rampart argues that this factor weighs against a stay because Egg Medical filed the request for a stay five months after reexamination began. Pl.'s Br. at 10–11. Egg Medical avers that it waited to request a stay until after the transfer motion was resolved and the USPTO announced its first office action. Def.'s Br. at 17–18; Def.'s Reply Br. at 9–10. The motion to stay was filed on February 18, 2025, which was two months after the first office action, one month after the transfer motion was denied, and the same day as the Proposed Scheduling Order.

Rampart cites to <u>Boston Scientific</u>, 777 F. Supp. 2d at 789, to support their argument that the timing of the request weighs against a stay.  Pl.'s Br. at 10.  But <u>Boston Scientific</u> is distinguishable.  There, the request for reexamination was untimely because it was filed over four year*s* after the court issued its claim construction opinion.  <u>Boston Scientific</u>, 777 F. Supp. 2d at 789.  The motion to stay was filed another eleven months after the untimely request for reexamination. <u>Id.</u>  Additionally, a trial date had been set and discovery was complete before the defendant requested a stay.  <u>Id.</u>

Here, no trial date has been set, discovery has only just been initiated, Egg Medical requested a stay six months after a timely reexamination request, and two months after an initial office action.  These facts do not suggest "inappropriate litigation tactics."  <u>See</u> <u>Ever Win</u>, 902 F. Supp. 2d at 508–09 (finding no prejudice when defendant requested a stay months after a complaint, before a trial date was set, before discovery began, and before a scheduling order was set).  For these reasons, this factor weighs against a finding of undue prejudice or clear tactical advantage.

### C. Status of the Reexamination Proceedings

Rampart argues that this factor suggests undue prejudice because reexamination is "potentially years away from conclusion."  Pl.'s Br. at 11.  Egg

Medical responds that this concern is insufficient to deny a stay.  Def.'s Reply Br.

at 10–11.  The Court agrees.

Potential for delay alone does not constitute undue prejudice.  E.g., Ever

Win, 902 F. Supp. 2d at 509.  When considering the status of the review

proceedings, requesting a stay after an initial office action lowers the risk of

prejudice compared to requesting a stay before an initial office action.  TC Tech.,

2021 WL 4521045, at *9.  The Court also does not consider possible extensions of

delay by the possibility of appeals from the examiner's decision.  British

Telecomms., 2020 WL 5517283, at *7.

Here, the request for a stay was made after an initial office action, and

Rampart's sole argument under this factor is the potential for delay.  The USPTO

has rejected all thirty claims of Rampart's '056 Patent, and Rampart recently

submitted proposed amendments to the USPTO for every claim.  Decl.

Marchevsky Ex. 3; Suppl. Decl. Marchevsky Ex. 7.  While Rampart suggests that

the Parties can address amendments made during reexamination on an "ongoing

basis as they produce their respective contentions, claim construction and

discovery," Pl.'s Br. at 15, that suggestion is unworkable.   The Parties' Joint

Proposed Scheduling Order allows amendments "only by order of the Court upon a

timely showing of good cause."  Joint Prop. Sched. Order ¶ 7.  Rampart's proposal

will require the Court to resolve serial requests from the Parties for amendments,

and to do so piecemeal is an inefficient use of the Court's resources. Accordingly, this factor does not suggest undue prejudice.

### D. Relationship of the Parties

Rampart argues that this factor weighs heavily against a stay because the Parties are direct competitors. Pl.'s Br. at 4–9. Egg Medical argues that this argument fails because its accused prototype has neither been sold nor made available on the market, and that Egg Medical does not sell any radiation shielding systems with rotating shields. Def.'s Br. at 16; Def.'s Reply Br. at 7–8.

This Court recognizes that a stay is likely to "prejudice a patent owner if the parties are direct competitors and the patent owner is likely to suffer a competitive disadvantage from a stay pending reexamination." British Telecomms., 2020 WL 5517283, at *7. Parties are direct competitors when they sell like products to the same market. E.g., id.; TTI Consumer Power Tools, 2022 WL 16739812, at *2. When parties are direct competitors, there is a reasonable chance that the party asserting infringement will suffer "loss of market share or erosion of goodwill." British Telecomms., 2020 WL 5517283, at *7 (quoting Princeton Dig. Image Corp., 2014 WL 3819458, at *2). But when a defendant does not sell a potentially infringing product in the same market, granting a stay is unlikely to cause such harm. Id.; TTI Consumer Power Tools, 2022 WL 16739812, at *2.

In <u>TTI Consumer Power Tools</u>, the court explained that this analysis turns on competition in the same specific market, not the mere fact that the parties may be considered competitors in the broader sense. <u>See</u> 2022 WL 16739812, at *2. TTI alleged that the parties were direct competitors because both sold the product at issue. <u>Id.</u> at *1–2. But the court disagreed because while TTI sold the product only to Home Depot, Lowe's sold it directly to consumers. <u>Id.</u> at *2. The court reasoned that "Lowe's and Home Depot are direct competitors, but Lowe's and TTI are not." <u>Id.</u>

Rampart and Egg Medical do not share a marketspace concerning the allegedly infringing device. The allegedly infringing prototype is neither on the market nor available for sale. Def.'s Br. at 16–17; Def.'s Reply Br. at 7–8. Rampart's concerns about loss of market share or goodwill are unlikely to manifest absent the sale of the current prototype. <u>See</u> <u>TTI Consumer Power Tools,</u> 2022 WL 16739812, at *2. Even if Rampart suffers any such injury, an award of monetary damages upon a finding of infringement is a sufficient remedy such that this does not cut against a stay. <u>Id.</u>; <u>British Telecomms.</u>, 2020 WL 5517283, at *8 (explaining that "prejudice from any delay would be mitigated by an award of pre-judgment interest on any judgment that [plaintiff] might be awarded if it prevails on its infringement claim"). For these reasons, this factor does not give rise to a finding of undue prejudice or tactical advantage.

## CONCLUSION

Based on the foregoing analysis, the Court concludes that a stay of the proceedings pending *ex parte* reexamination is warranted in this case because: (1) reexamination will simplify the issues for trial; (2) this case is in the early stages of litigation; and (3) a stay will not cause undue prejudice to Rampart or present a clear tactical advantage to Egg Medical.

Upon consideration of all papers and proceedings in this action, it is hereby

**ORDERED** that Egg Medical's Motion to Stay Proceedings Pending *Ex Parte* Reexamination of U.S. Patent No. 11,660,056, (D.I. 32), is granted; and it is further

**ORDERED** that this action is stayed pending the final determination in the United States Patent and Trademark Office *Ex Parte* Reexamination Nos. 90/019,649, 90/019,650, and 90/019,651; and it is further

**ORDERED** that the Parties shall notify the Court within 14 days of the final determination in United States Patent and Trademark Office *Ex Parte* Reexamination Nos. 90/019,649, 90/019,650, and 90/019,651; and it is further

**ORDERED** that the Parties shall provide a status report to the Court on or before July 14, 2025.  The Parties shall file status reports every ninety days thereafter during the pendency of the stay.

DATED: April 14, 2025

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves[*]
U.S. District Court Judge

---

[*] Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.